**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **GERALD B. KELLEY,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 2:04cv137 |
| ) | **Electronic Filing** |
| **CSX TRANSPORTATION, INC.**, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

**April 12, 2006**

**I.   INTRODUCTION**

Plaintiff, Gerald B. Kelley ("Kelley" or "Plaintiff"), filed a complaint seeking relief based on negligence and violations of Federal Employers Liability Act, 45 U.S.C. § 51, *et seq*. ("FELA"), against Defendant, CSX Transportation, Inc. ("CSX" or "Defendant").  In his complaint, Plaintiff has set forth nine (9) separate counts against the Defendant as follows: (1) violation of local, state and/or federal law, including but not limited to the Federal Employers Liability Act; (2) failure to provide Plaintiff with a reasonably safe place to work; (3) failure to provide Plaintiff with adequate assistance to perform his duties; (4) negligently requiring Plaintiff to perform his assigned duties under unsafe conditions; (5) failure to provide Plaintiff with adequate, effective and efficient instructions, and/or time to carry out his duties; (6) failure to provide Plaintiff with safe and adequate equipment to perform his assigned duties; (7) failure to routinely and regularly inspect and repair equipment and machinery designed and/or purchased by Defendant for the purpose, in whole or in part, of reducing or eliminating the manual dexterity required of its employees, including Plaintiff, in the performance of their work duties; (8) failure to provide proper ear protection and testing; (9) and failure to use due care and caution under the circumstances.

CSX has filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Responses have been filed, and the motion is now before the Court.

**II.     STATEMENT OF THE CASE**

Kelley began his railroad career with the B & O Railroad ("B & O") in September of 1968 in the Maintenance of Way Department. (Kelley's Deposition Testimony at Exhibit "B," hereinafter "Kelley Dep." p. 25). Sometime thereafter, B & O underwent a merger and became Chessie Systems. *Id.*. During his time with both B & O and Chessie, Kelley worked as a trackman, mechanic, and welder. *Id.* Sometime in the '90s, Chessie Systems was merged into CSX, and Kelley began working as a vehicle operator for CSX. (Kelley Dep. pp. 25-26, 35). Plaintiff retired with CSX on February 2, 2002. (Kelley Dep. p. 4).

Plaintiff alleges that as a result of CSX's negligence, he has suffered damages to his hands, neck, cervical spine, left knee, low back and lumbar spine, neck, hips, shoulders, and has suffered hearing loss. (Kelley Dep. p. 6). Kelley also contends he experienced symptoms of nervousness, depression, and anxiety sometime in the '80s because of the many railroad mergers and the resulting job insecurity. (Kelley Dep. pp. 21-22).

Plaintiff first noticed symptoms of pain in his extremities (arms, fingers, and shoulders) in the late '70s. (Kelley Dep. pp. 13-14). Kelley knew that these symptoms were work related, but failed to seek medical attention. (Kelley Dep. p.14). Plaintiff also testified that he recalled seeing an article in a union bulletin in early 1990 or 1991 warning about repetitive motion, vibration, and carpal tunnel. (Kelley Dep. pp. 257-258). Moreover, prior to 1995, Kelley knew something was wrong, because, as a result of his use of a Matwell hydraulic tamping tool, he was unable to grip properly. (Kelley Dep. pp. 133-134). In or around 1995, at the request of a law firm, Kelley was tested for carpal tunnel syndrome, which confirmed that he had mild to moderate carpal tunnel syndrome. (Kelley Dep. pp. 243-246).

Plaintiff testified that he first noticed pain in his neck and back in the late 1970's. (Kelley Dep. pp. 18-19). He associated the pain with the heavy lifting required of his job.

(Kelley Dep. p. 19).  He sought medical attention at Uniontown Hospital on May 3, 1984, and was diagnosed with an acute low back strain; in reality, it was a bulged disc, which was not identified until 1986. (Kelley Dep. p. 176).  From the onset of these injuries, Kelley continued to suffer from back and neck pain. *Id.*   Plaintiff's last reported back injury was in the late 1980's or early 1990's.  (Kelley Dep. p. 129).

In the late 1970's or early 1980's, Kelley alleges that he was injured in the course of his employment when he slipped and hit his left knee against a railroad tie. (Kelley Dep. p. 9). Plaintiff sought treatment at Mercy Hospital, but claims he never received a diagnosis. (Kelley Dep. p. 10).  As a result of this incident, Kelley contends that he has suffered from pain in his knee ever since the injury.  *Id.*  Kelley further testified that he experienced pain in his hips beginning in the '80s, which he believed was also work related. (Kelley Dep. p. 230).  Because of the pain in his hips, Kelley saw Dr. Hasouni sometime before 1999, and he diagnosed Plaintiff with arthritis in his hip and spine. *Id.*

The first instance of noise exposure that Kelley recalled was in 1970, when he was working without hearing protection on an anti-creeper machine with a motor sitting right next to his left ear.  (Kelley Dep. p. 266).  Plaintiff testified that he never wore ear protection when working on the yard gang, even if he was working next to a loud, diesel engine.  (Kelley Dep. p. 268).  Plaintiff first noticed ringing in his ears and hearing loss in the 1980's, which he believed was the result of exposure to excessively loud noises during the course of his employment with the railroad.  (Kelley Dep. p. 287).  Kelley testified that he recalled seeing hearing protection safety bulletins posted as far back as the early '90s.  (Kelley Dep. p. 259).  He also admits that he was given instruction on how to wear ear plugs, but contends he did not wear them around high noise levels all the time.  (Kelley Dep. p. 293).  In 1993, Plaintiff underwent a hearing exam given by his employer. (Kelley Dep. p. 291).  He was notified that his hearing was getting worse and was advised to see a doctor.  (*Id.*).

In 1999, Kelley was involved in a motor vehicle accident while driving in a CSX vehicle. (Kelley Dep. p. 227). He testified that he sustained injuries to his left hand, fingers, wrist, neck, and shoulder. (Kelley Dep. p. 228). Plaintiff sued the other driver, and the case was settled for twenty thousand ($20,000.00) dollars. (Kelley Dep. pp. 137-138).

In the early or mid '90s, Plaintiff began using a Matwell hydraulic power tamping tool, a machine implemented for use by railroad employees which caused extreme vibration. (Kelley Dep. p. 57). Kelley's use of the machine caused him difficulty with his hands, arms, and joints. (*Id.*). Though Kelley does not specifically remember the last time he used the Matwell tool, he estimated that it may have been in 2001. (Kelley Dep. p. 206). Kelley further contends that the use of a claw bar, another tool utilized in his occupation, caused him to suffer neck pain. (Kelley Dep. p. 59).

By the '90s, though, Kelley was doing less track work and was working more as a vehicle operator. (Kelley Dep. p. 79). He contends that the reaching and steering while driving aggravated the pain in his arm. (Kelley Dep. p. 80). Though he was doing more driving, Plaintiff testified that he continued to do a fair amount of lifting, loading plates weighing between twenty (20) and thirty (30) pounds. Though he did not do this on a daily basis, Plaintiff testified that when he did, he lifted approximately one hundred (100) to two hundred (200) plates by himself. (Kelley Dep. p. 83). Kelley occasionally had to lift four (4) to ten (10) fifty (50) pound angle bars on the truck, but assistance was generally available. (Kelley Dep. pp. 83-84). Plaintiff further testified that half the time he drove the truck, someone else did the lifting. (Kelley Dep. p. 84). A few years prior to his retirement, CSX starting leasing a new GMC dump truck which had soft seats and power steering. (Kelley Dep. p. 88). Kelley testified that the last three or four years, when working with the new truck, were "A-Ok". *Id.*

Kelley further testified that, to promote safety on the job, CSX: (1) provided safety videos with instructions on how to lift equipment; (2) issued safety goggles and hearing protection; (3) held daily morning safety meetings during Plaintiff's last five (5) years of

employment; (4) held yearly safety seminars which taught ergonomics; and (5) required employees, including Plaintiff, to pass annual safety certification tests.  (Kelley Dep. pp. 213-221).

### III.   LEGAL STANDARD FOR SUMMARY JUDGMENT

Pursuant to FED. R. CIV. P 56(c), summary judgment shall be granted when there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law.  To support denial of summary judgment, an issue of fact in dispute must be both genuine and material, *i.e.*, one upon which a reasonable fact finder could base a verdict for the non-moving party and one which is essential to establishing the claim.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. *Id*.  The court's consideration of the facts must be in the light most favorable to the party opposing summary judgment and all reasonable inferences from the facts must be drawn in favor of that party as well.  *Whiteland Woods, L.P. v.  Township of West Whiteland,* 193 F.3d 177, 180 (3d Cir. 1999), *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir. 1987).

When the moving party has carried its burden under Rule 56(c),  its opponent must do more than simply show that there is some metaphysical doubt as to the material facts*. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P 56(e).  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. at 587.

**IV.   DISCUSSION**

Plaintiff alleges violations of FELA, which imposes liability on common carriers by railroad, in interstate or foreign commerce, for injuries caused to employees from acts of negligence.  45 U.S.C. § § 51 *et seq.*  For Plaintiff to recover under FELA, he must prove that (1) Defendant is a common carrier by railroad engaged in interstate commerce; (2) he was employed by Defendant with duties furthering such commerce; (3) his injuries were sustained while he was so employed; and (4) his injuries were the result of the negligence of Defendant.  45 U.S.C. § 51.  However, no action shall be maintained under FELA unless commenced within three years from the day the cause of action accrued.  45 U.S.C. § 56.  CSX contends that the appropriate statute of limitations for actions brought under FELA bars Plaintiff's claims.  CSX argues that Plaintiff failed to file any FELA claims arising from negligence by the railroad within three (3) years after an injury giving rise to a cause of action occurred, and therefore, seeks judgment as a matter of law.

The Third Circuit has recognized two types of situations involved in the application of the FELA statutes of limitations period: (1) when an employee is injured in a traumatic incident, for which determination of the limitations period generally presents little difficulty; and (2) when the injury is an occupational disease that has an indefinite beginning and worsens over the course of time, for which determination of the statutory accrual time is more difficult to attain.  *Kichline v. Consolidated Rail Corp.*, 800 F.2d 356, 358 (3d Cir. 1986).  Regarding the second type of injury above, the Supreme Court found that if an injury was the cumulative result of repeated exposure to harmful elements and had developed "over a period of time as opposed to a point in time," the statutory period within which a complaint may be filed does not begin until the actual injury manifested itself to the person injured.  *See Urie v. Thompson*, 337 U.S. 163, 170 (1949) (holding that for the purpose of a statutory time limit, an injury is deemed to have occurred when it manifests itself to the injured party, and noting that the legislative policy

underlying the development of a limitations period was probably not intended to preclude a plaintiff's ability to pursue a legal remedy due to "... blameless ignorance").

The discovery rule was further developed by the Supreme Court in *United States v. Kubrick*, 444 U.S. 111 (1979), where, applying the rule to medical malpractice claims under the Federal Tort Claims Act, the Court held that the statutory time frame begins to run once a plaintiff is aware of his injury and its cause, regardless of whether he is aware that legal recourse may be available to him. *United States v. Kubrick*, 444 U.S. at 124. In its interpretation of the discovery rule, the Court of Appeals for the Third Circuit held that a cause of action begins to accrue when an injured party possesses "sufficient critical facts" that his or her rights have been invaded. *See In re Central R. Co.*, 950 F.2d 887, 892 (3d Cir. 1991) (acknowledging the rule established in *Kichline* as the controlling authority in determining accrual of the statute of limitations for FELA claims); *see also Kichline v. Consolidated Rail Corp.*, 800 F.2d at 359; *Zeleznik v. United States*, 770 F.2d 20, 23 (3d Cir. 1985) (applying the discovery rule under the Federal Tort Claims Act to conclude that lack of awareness of a negligent act did not serve to toll the statute of limitations).

In *Kichline*, the court concluded that the statute of limitations began to run not when the plaintiff terminated his employment, but when the plaintiff became aware that he had pulmonary disease and was warned to avoid pollutants found in his work environment. *Kichline v. Consolidated Rail Corp.*, 800 F.2d at 360-361. Similarly, in *Tolston v. National Railroad Passenger Corp.*, 102 F.3d 863 (7th Cir. 1996), plaintiff asserted claims under FELA based upon a knee injury that she had sustained during her employment as a coach cleaner. *Tolston v. National Railroad Passenger Corp.*, 102 F.3d at 864-865. The plaintiff, who had experienced knee pain since at least 1989, asserted that her claims, filed in 1995, were not untimely because "she believed that her knee pain was due to ordinary wear and tear, especially because she had a weight problem that became more pronounced as time went by." *Id.* at 866. The court noted that "[a] plaintiff need not be sure which cause is predominant, as long as she knows or has

reason to know of a potential cause." *Id.* at 865. In finding that the plaintiff's claim was barred by the statute of limitations, the court stated "a cause of action accrues for statute of limitations purposes when a reasonable person knows or in the exercise of reasonable diligence should have known of both the injury and its governing cause." *Id.* (quoting *Fries v. Chicago & Northwestern Transp. Co.*, 909 F.2d 1092, 1095 (7th Cir. 1990).

Further, some courts have held that where a plaintiff's injury was caused incrementally by the defendant's continuous tortious activity, a plaintiff who cannot recover for the injury itself due to the statute of limitations also cannot recover for any subsequent aggravation of that injury, even where the aggravation occurred within the statutory period. *See, e.g., Mounts v. Grand Trunk Western R.R.*, 198 F.3d 578 (6th Cir. 2000). The Third Circuit in *Kichline*, however, recognized a separate "aggravation" cause of action. *Kichline v. Consolidated Rail Corp.*, 800 F.2d at 361. Thus, if an employee can establish the railroad's negligence, a plaintiff is entitled to claim damages for the aggravation of a previous, but statutorily excluded, work related injury. *Id.*

Here, Kelley contends that he is entitled to pursue a cause of action against CSX for the aggravation of his injuries that occurred during the three (3) year period prior to the filing of the initial action in West Virginia. The West Virginia action was filed on or about January 19, 2000. Kelley claims that the statute of limitations was tolled during the pendency of that suit, and any cause of action that arose three years prior to the filing of the West Virginia action can not be barred by the statute of limitations. The FELA statute of limitations is not totally inflexible, and in some circumstances it may be extended beyond three years. *See Burnett v. New York C. R. Co.,* 380 U.S. 424, 427 (1965). The instant action, however, does not involve any of those circumstances.

The long-standing rule has been that when a plaintiff voluntarily dismisses an action without prejudice, the plaintiff is in the same legal position as if he or she had never brought the suit. *Chandler v. Norfolk & Western Railway Company*, 1988 U.S. Dist Lexis 18257 at *4

(W.D. Va. 1988) (*citing Bomer v. Ribicoff,* 304 F.2d 427, 428 (6th Cir. 1962)).  Furthermore, "if a plaintiff mistakes his remedy, in the absence of a statutory provision saving his rights, or where from any cause a plaintiff becomes nonsuit [sic] or the action abates or is dismissed, and, during the pendency of the action, the limitation runs, the remedy is barred." *Chandler*, 1988 U.S. Dist. Lexis 18257 at 4 (*citing Willard v. Wood,* 164 U.S. 502, 503 (1896)).  *Burnett* created an exception to this general rule only when fairness required that the action not be barred when the prior suit was timely filed but was dismissed for improper venue.  *Burnett v. New York C. R. Co.*, 380 U.S. at 430.

In the present action, the *Burnett* exception does not apply because the West Virginia action was not dismissed for improper venue.  The West Virginia action was dismissed voluntarily and without prejudice, as per stipulation.  The parties agreed that all claims raised in the West Virginia action were included, and that no defenses were waived by Defendant.   As such, Kelley is in the same legal position as if the West Virginia suit was never commenced.  Under these circumstances, Kelley may seek relief under FELA only for causes of action that arose three (3) years prior to February 2, 2004, the commencement of the instant action. Any cause of action that accrued prior to February 2, 2001, therefore, is barred by the statute of limitations.

Where, as here, the statute of limitations is at issue, the plaintiff has the burden to establish the extent of the injury occurring during the relevant time period.  *Kichline*, 800 F.2d at 861.  The first claim of injury that Kelley must establish is for injuries to both of his hands and to his left shoulder.  In his deposition, Plaintiff admitted that the injuries occurred sometime in the late 1970's. (Kelley Dep. pp. 13-14).  He also admitted that the injuries were work related. Kelley's testimony, therefore, demonstrates that he was aware of his injury -- pain in his fingers, hands and shoulders-- in the late 1970's.  Moreover, prior to 1995, Kelley knew something was wrong, because, as a result of his use of a Matwell hydraulic tamping tool, he was unable to grip properly.  (Kelley Dep. pp. 133-134).  Kelley, in fact, was tested for carpal tunnel syndrome

sometime around 1995 and was informed that he had mild to moderate carpal tunnel syndrome. (Kelley Dep. pp. 243-246).

Once Kelley was aware of the injury and its potential cause, he had an affirmative duty to investigate whether he could seek legal redress against his employer. Kelley, therefore, was aware of the injuries to his hands and shoulder, and was also aware that these injuries were caused by work related activity. Because Kelley's cause of action for these injuries would have accrued, at minimum, sometime in 1995, they are barred by the statute of limitations.

With regard to his claim for aggravation of the injuries to his hands, Kelley failed to establish that any aggravation occurred during the relevant statutory period as required under *Kichline.* An injury resulting from aggravation had to occur after February 2, 2001. The machine that allegedly aggravated the injuries to Plaintiff's hands was the Matwell hydraulic power tamping tool. (Kelley Dep. p. 57). Kelley did not remember using the tool in 2001, stating only that it was "highly unlikely" that he did not use the tool. (Kelley Dep. p. 206). This is too speculative to establish that a claim for aggravation occurred within the relevant statutory period. Further, the vehicular accident in which Plaintiff contends he aggravated the injury to his hands and shoulder, was the subject of a separate lawsuit and was settled. In any event, the accident occurred in 1999, more than three (3) years prior to the commencement of this lawsuit. There is no affirmative evidence in the record that would support Kelley's claim that these injuries were aggravated, by the negligence of CSX, within the relevant statutory period. Therefore, any claim for aggravation of the injuries to Plaintiff's hands is barred by the statute of limitations.

Kelley's claim for aggravation of his shoulder injuries is also barred. Plaintiff first alleged that his injuries were aggravated because of his reaching and steering while driving the truck during the 90s. (Kelley Dep. pp. 79-80). However, he also admitted that during the last four years of his employment, he drove a new model truck which did not cause any aggravation of his injuries. (Kelley Dep. p. 88). Moreover, any injury caused by the 1999 motor vehicle

accident are not actionable here. There are no affirmative instances of aggravation during the relevant statutory period that support Kelley's claim.  Again, any claim for aggravation of the injuries to Plaintiff's shoulders is barred by the statute of limitations.

The injuries to his neck and back were first noticed by Kelley in the late 70s. (Kelley Dep. p. 19). Kelley admitted that he attributed these injuries to the heavy lifting he did on the job. *Id.* Moreover, Kelley was diagnosed with an acute low back strain, identified as a bulged disc, in 1986. (Kelley Dep. p. 176).  He last reported any back injury in the late '80s or early '90s, (Kelley Dep. p. 129), and Kelley was diagnosed with arthritis in his spine sometime prior to1999.  (Kelley Dep. p. 230).  With knowledge of both a bulged disc and arthritis, Kelley failed to seek legal redress until February 2, 2004.  Moreover, there is no evidence of aggravation to the injuries during the applicable statutory period.  Therefore, the statute of limitations bars Kelley's claims for work related back and neck injuries, as well as any claims for aggravation of those injuries.

As set forth above, Kelley fell and injured his knee during the course of his employment sometime in the late '70s or early '80s.  (Kelley Dep. p. 9).  Kelley maintains that the pain from this injury has never subsided. (Kelley Dep. p. 10).   There is no proof in this record that any aggravation of his knee injury occurred after February 2, 2001.  The claim for injury to his knee and any aggravation of such injury is barred by the statute of limitations.

Kelley also claims injuries to his hips as a result of his employment.  The pain in his hips, however, manifested itself in the 1980's, and Kelley believed at that time that his injuries were related to work. (Kelley Dep. p. 230).  Because he had knowledge of the injury and its cause, Kelley's cause of action for these injuries accrued in or around the 1980's. The statute of limitations for action on these injuries has long expired.

Sometime before 1999, Kelley was diagnosed with arthritis in his hips. (Kelley Dep. p. 230).  While the arthritis may be sufficient for a claim of aggravation, Kelley has produced no evidence that his hip injury was aggravated during the three (3) years prior to the

11

commencement of this lawsuit. As such, Kelley's claim for aggravation of his hip injury is also barred by the statute of limitations.

Kelley also seeks redress for hearing loss. Kelley admitted that he first noticed ringing in his ears and hearing loss sometime in the '80s. (Kelley Dep. p. 287). He further admitted that he thought his symptoms were the result of years of exposure to loud noises at work. *Id.* As set forth above, Kelley recalled the first instance of noise exposure in 1970, when he was working without hearing protection on an anti-creeper machine with a motor sitting right next to his left ear. (Kelley Dep. p. 266). Kelley admitted that he never wore ear protection when working on the yard gang, even if he was working next to a loud diesel engine. (Kelley Dep. p. 268). Further, Kelley testified that he recalled seeing hearing protection safety bulletins posted as far back as the early 1990's, and that he was given instruction on how to use the ear plugs. Kelley admitted, however, that he did not wear ear protection all the time, even when exposed to high noise levels. (Kelley Dep. pp. *259,* 293). Moreover, Kelley underwent a hearing exam in 1993 and was notified that his hearing was getting worse and was advised to see a doctor. (*Id.*)

Similarly, in *Fries v. Chicago & Northwestern Transp. Co.*, 909 F.2d 1092 (7th Cir. 1990), a railroad worker brought a FELA action for hearing loss resulting from his work related activities. There, the plaintiff noticed a decline in his hearing and tinnitus around 1981 or 1982. *Id.* at 1094. Although his hearing problems bothered him significantly, plaintiff did not seek medical treatment until May 1985. *Id.* Only then did he learn how serious the impairment was. He sued under the FELA in November 1987, claiming that the railroad had acted negligently in requiring him to work near loud industrial noise and in failing to give him the proper protective gear. *Id.* Finding that the plaintiff's action was time-barred under FELA's three year statute of limitations, the court stated:

> upon experiencing symptoms a plaintiff has a duty to investigate both the injury and any suspect cause. . . . [T]o allow a plaintiff to unilaterally postpone the running of the statute of limitations by negligently failing to investigate the fact of and cause of his injury would thwart the legislative intent of 45 U.S.C. § 56. . . That

> [plaintiff's] injury had not reached its maximum severity in 1981 but continued to progress does not affect this result.

*Fries v. Chicago & Northwestern Transp. Co.*, 909 F.2d 1092, 1096 (7th Cir. 1990).

Kelley recognized an injury and attributed it to activities performed in the course of his employment as early as the 1980's. He failed to investigate or seek medical attention. Even after he was advised to seek medical attention for his hearing loss, which was worsening, Kelley failed to do so. Based on the undisputed facts, Kelley's cause of action for his hearing loss clearly accrued more than three years before he filed this lawsuit. Kelley knew or should have known of the injury to his ears and its cause long before February 2, 2004. Unfortunately this action is now time-barred.

As for a cause of action for aggravation to his hearing loss, Kelley claims that he often experiences ringing in his hears and has noticed a general reduction in ability to hear people. (Kelley Dep. p. 309). Proving an aggravation of injury is not the sole component of a cause of action for aggravation, one must also prove the employer's negligence at the time the aggravation occurred. *Kichline,* 800 F.2d at 361. "Under [FELA], the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." *Rogers v. Missouri P. R. Co.*, 352 U.S. 500 (1957). Even under the less stringent standards for proving negligence under FELA, Kelley has failed to show even the slightest act of CSX, after February 2, 2001, which may have caused aggravation of his hearing loss. Absent the necessary showing of negligence, or even an allegation of negligence during the applicable statutory period, Kelley's cause of action for aggravation of his hearing loss also fails.

Finally, Kelley alleges that he experienced symptoms of nervousness, depression, and anxiety in the '80s due to railroad mergers and low job security. (Kelley Dep. pp. 21-22). A cause of action for these symptoms would have accrued sometime in the '80s, and applying the above analysis, this cause of action also is barred by FELA's three (3) year statute of limitations.

Nor can a claim for aggravation of these injuries be viable, because there is no evidence in the record that CSX's negligence caused the anxiety set forth above during the statutory period..

### IV.   CONCLUSION

Based on the foregoing, the Court finds that the Kelley's cause of action for employer negligence pursuant to 45 U.S.C. § § 51 *et seq*, is barred by the statute of limitations set forth in 45 U.S.C. § 56.  CSX's motion for summary judgment will be granted.  An appropriate order follows.

s/David Stewart Cercone
David Stewart Cercone
United States District Judge

cc:	Peter D. Friday, Esquire
	Woomer & Friday LLP
	3220 West Liberty Avenue
	Suite 200
	Pittsburgh, PA 15216-2320

	Robert L. Schneider, Jr., Esquire
	Burns, White & Hickton
	120 Fifth Avenue, Suite 2400
	Pittsburgh, PA 15222-3001